LKLINE, J.
Appellant, Edwina Penn, appeals the decision of the workers’ compensation judge (“WCJ”) dismissing her claim against ap-pellees, Options, Inc. (“Options”), and its carrier, Louisiana Workers’ Compensation Corporation (“LWCC”). For the following reasons, we affirm.
FACTS AND PROCEDURAL HISTORY
Claimant, Edwina Penn, was employed by Options where she served as a licensed nursing assistant, working with clients who were handicapped and who had special needs. On February 1, 2000, while in the course and scope of her employment, Ms. Penn was attacked by a client and suffered injury to her neck. Ms. Penn received medical treatment approved and paid for by Options for the injury to her neck. She ultimately returned to work. She asserts that she also suffered injury to her right knee as a result of that attack and that her right knee injury was aggravated on February 16, 2000 when she was required to kneel down during training to perform a CPR test. Options denies that such an incident occurred on February 16, 2000.
On December 5, 2000, Ms. Penn filed a disputed claim for compensation with the Office of Workers’ Compensation (“OWC”), alleging injury to her right knee due to a work-related accident on February 16, 2000 where she knelt down on the floor during training. On December 6, 2000, Ms. Penn filed a separate disputed claim for compensation form with the OWC alleging a cervical strain, on February 1, 2000, whereby a patient attacked her and grabbed her around her neck. She asserted that no wage benefits had been paid, no choice of orthopaedic physician was allowed, and that she was disabled. In both claims, attorney’s fees and penalties were requested, the latter due to her other knee injury not being acknowledged. Both claims were consolidated by order dated March 19, 2001. Due to claimant’s failure to appear for a properly noticed conference or for trial, her claim was dismissed without prejudice on March 15, 2002, only to be reinstated upon a showing of good cause within thirty days of that order. On April 4, 2002, claimant *560 filed a motion and order to reinstate, which was signed by the WCJ.
13A trial on the merits was held on May 29, 2002. On June 5, 2002, the WCJ rendered and signed a judgment stating the following:
Upon consideration of the evidence the Court concludes as follows:
IT IS ORDERED, ADJUDGED AND DECREED that the employee has failed to meet her burden of proof in proving an accident with injury to her right knee occurred during the course of her employment with the employer, allegedly occurring on or about February 16, 2000 thus dismissing this aspect of her claim with prejudice.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the employee has failed to carry her burden in proving the necessity of ongoing treatment with respect to her February 1, 2000 cervical strain occurring during the course of her employment with Defendant herein, thus dismissing her claim for continued benefits without prejudice.
Claimant appeals this judgment.
LAW AND DISCUSSION
Factual findings in a workers’ compensation case are subject to the manifest error or clearly wrong standard of appellate review. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840, p. 7 (La.7/1/97), 696 So.2d 551, 556. For an appellate court to reverse a trial court’s factual finding, it must find from the record that a reasonable factual basis does not exist for the finding of the trial court and that the record establishes that the finding is clearly wrong. Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). If the findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Furthermore, when factual findings are based on the credibility of witnesses, the fact finder’s decision to credit a witness’s testimony must be given “great deference” by the appellate court. Rosell v. ESCO, 549 So.2d 840, 844 (La. 1989). Thus, when there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, although the appellate court may feel that its own evaluations and inferences are as reasonable. Id.
In order for a claimant to be entitled to recover workers’ compensation benefits, she must prove, by a preponderance of the evidence, that a work-related accident occurred and that an injury was sustained. A claimant’s 1 ¿testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker’s version of the incident, and (2) the worker’s testimony is corroborated by the circumstances following the alleged incident. Jackson v. Savant Insurance Company, 96-1424, p. 3 (La.App. 1 Cir. 5/9/97), 694 So.2d 1178, 1180. See also Bruno v. Harbert International Inc., 593 So.2d 357, 361 (La.1992).
In workers’ compensation cases, disability is presumed to be the result of the work-related accident if the claimant was in good health before the accident, and the symptoms of the disability appear after the accident and continue to manifest themselves. This presumption is available when sufficient medical evidence is introduced to show a reasonable possibility of a causal connection between the disability and the work-related accident, or that the nature of the accident raises a natural *561 inference that such a causal connection exists. LeBlanc v. Cajun Painting Inc., 94-1609, p. 10 (La.App. 1 Cir. 4/7/95), 654 So.2d 800, 807, writs denied, 95-1706, 95-1655 (La.10/27/95), 661 So.2d 1349, 1350. Thus, where there is proof of an accident and a following disability, without an intervening cause, it is presumed that the accident caused the disability. Jackson, 694 So.2d at 1180. Moreover, the fact that a claimant does not realize or diagnose the full extent of his injury immediately after an accident should not bar him from recovery. Middleton v. International Maintenance, 95-0238, pp. 6-7 (La.App. 1 Cir. 10/6/95), 671 So.2d 420, 424, writ denied, 95-2682 (La.1/12/96), 667 So.2d 523.
Thus, in determining whether a worker has shown by a preponderance of the evidence that an injury-causing accident occurred in the course and scope of employment, the trier of fact is expected to focus upon the issue of credibility because, absent contradictory circumstances and evidence, a claimant’s testimony is accorded great weight. Bruno, 593 So.2d at 361. The determinations by the workers’ compensation judge as to whether the claimant’s testimony is credible and whether the claimant has discharged his burden of | Rproof are factual determinations and will not be disturbed upon review in the absence of manifest error or unless clearly wrong. Id.
In the instant case, in dispute was whether the claimant suffered compensa-ble workers’ compensation injuries to her right knee as a result of a February 16, 2002 incident when she knelt down during training, and also whether the claimant’s cervical strain resulting from the February 1, 2002 incident, when she was attacked by a client, necessitates ongoing treatment. The OWC judge concluded that the claimant failed to satisfy her burden of proof in each instance.
Ms. Penn argues in her brief that she injured her knee while fighting off her client as he attacked her on February 1, 2000 and that she re-injured her knee when she was required to kneel down to perform a CPR test on February 16, 2000. Options denies that Ms. Penn injured her right knee while in the course and scope of her employment. Options does not contest that Ms. Penn injured her neck, but contends that she does not require further treatment.
The record reflects that Ms. Penn worked for Options in several capacities over time, including working as a licensed nursing assistant. According to the testimony of Ms. Penn, she primarily worked with handicapped clients or persons with special needs. In February of 2000, she picked up a fourteen-year-old-male client from school. She was driving him home when he grabbed her by the neck and started choking her from behind. This occurred three times before she could find a place to pull over on the side of the road. When she went to retrieve the keys from the ignition, he pulled her hair. She then used an office phone to contact her supervisor. She also contacted his brother and told him to call the client’s mother. Once the supervisor arrived at the scene, they all proceeded to the Ghent’s home. Once Ms. Penn was there, the client later attacked her again, choking her until she could break lose. Ms. Penn received approved medical treatment for her neck injuries.
According to the medical records of Ms. Penn introduced jointly into evidence, she first received treatment for her injury, as a result of the attack, at North Oaks Health System, with Dr. Mark S. Daunis, on February 8, 2000. Ms. |6Penn complained of soreness and stiffness of her neck, having reported being choked by a patient from behind on her right side. *562 Physical therapy/rehabilitation was prescribed three times a week. Dr. Daunis diagnosed Ms. Penn as having a cervical spine sprain. Muscle relaxers were prescribed. She then returned on February 15, 2000, where she reported pain at the base of the skull and a knot on the right side of her neck. She experienced pain when she moved her head quickly. On March 23, 2000, Ms. Penn’s next visit, she had knots on the right side of her neck but also stated that her neck was doing better. She requested more muscle relaxers. On March 31, 2000, she stated her neck was feeling much better, and the knots were smaller but the neck still “catches” sometimes. At this time, Dr. Daunis ordered Ms. Penn to undergo an MRI due to her cervical strain. Ms. Penn did not return to Dr. Daunis to have the MRI test performed or anytime thereafter. There was no indication in the medical records of her treatment by Dr. Dauntis that Ms. Penn injured her knee during the February 1, 2000 attack.
Ms. Penn later was treated by Dr. Mark J. Hontas. Ms. Penn testified that she sought treatment by Dr. Hontas as a result of her having injured her right knee during training. The medical report suggests that Ms. Penn’s initial visit was on June 19, 2000. The report does not indicate that she was treated at that time because there are no results of any examinations. The date of injury is stated as February 1, 2000 and the described injury was “cervical.” The next visit to Dr. Hon-tas was July 5, 2000. Here, Ms. Penn described the alleged incident of February 16, 2000 where she had to get down on her knees to do the CPR test and could not get up. She described that her right knee swelled afterwards and so did the left knee. In Dr. Honta’s report, he indicated that Ms. Penn stated that she had a history of knee pain but said that she had been able to walk. At that time, both knees were hurting and swelling. She had not been back to work. X-ray results showed that she had some degenerative changes in her knees bilaterally and had some swelling. Dr. Hontas’ impression was that Ms. Penn suffered with inflammation with underlying degenerative joint disease of the knees. He injected both knees and gave her something for pain. He advised |7that she continue taking ibuprofen and indicated he would see her in two to three weeks. Ms. Penn never returned to see Dr. Hon-tas.
Ms. Penn testified that she later went to the emergency room of Lallie Kemp Hospital for her neck and knee. The medical records from Lallie Kemp Hospital indicate that on April 7, 2000, Ms. Penn had with symptoms of arthritis. She had swelling of her hands and mild swelling of her knees. Her next visit was on August 21, 2000, where she suffered with cellulitis and osteoarthritis. On September 7, 2000, she had a yearly exam. Subsequent visits ensued, but none seemed to evidence that she received treatment for the cervical strain or the right knee injury she allegedly suffered as a result of the incident complained of in the instant case.
Options presented the testimony of Andrew Davis, the senior claims representative who handled Ms. Penn’s file. Mr. Davis indicated that he made contact with the employer and the medical providers. He also attempted to make contact with Ms. Penn’s attorney of record and was unable to obtain a statement. He concluded that there was no accident regarding Ms. Penn’s injuring her right knee. He indicated that he did not have any medical records or any history to corroborate her claim that she had injured her right knee. Also, when he did contact the office of Dr. Dauntis, he was informed that Ms. Penn had not continued her treatment regarding her neck, and it was concluded that Ms. Penn had discharged herself.
*563 After a thorough review of the record, we find that the WCJ had a reasonable basis upon which to determine that Ms. Penn failed to satisfy her burden of proving that she suffered a work-related knee injury and that she continued to suffer with cervical strain symptoms in her neck that necessitated ongoing treatment and rendered her disabled. No evidence in the record supports Ms. Penn’s assertion that she injured her right knee during the course and scope of her employment. When Ms. Penn visited Dr. Dauntis due to injury she sustained as a result of the February 1, 2000 attack, she did not appear to ever complain of her knee being injured; she complained only about her neck. It was mentioned four to five months later during a visit to see Dr. Hontas, yet even |son the records of her initial visit, only reference to “cervical” injury was noted. Ms. Penn’s visits to Lallie Kemp some time after the initial incident indicate a number of medical concerns and conditions, none of which allude to the cervical strain Ms. Penn suffered as a result of the February 1, 2000 incident. The medical records provide a reasonable basis for Options’ proposition that Ms. Penn’s complaints regarding her right knee are due to a history of arthritis and an underlying degenerative joint disease, as described by Dr. Hontas, as opposed to a work-related injury. Based upon a complete review of the record, we cannot say that the WCJ was manifestly erroneous or clearly wrong in its finding.
CONCLUSION
For the foregoing reasons, we affirm the decision of the workers’ compensation judge. All costs of this appeal are assessed to the appellant, Edwina Penn.
AFFIRMED.